[No. B194926. Second Dist., Div. Eight. June 29, 2007.]

J.C. GURY COMPANY, Plaintiff and Respondent, v.
NIPPON CARBIDE INDUSTRIES (USA) INC., Respondent and Appellant.

## Counsel

Law Offices of Joseph C. Markowitz for Respondent and Appellant.

Mollis & Mollis and Charles A. Mollis for Plaintiff Respondent.

OPINION

BOLAND, J.—

## SUMMARY

An arbitration clause provided that any controversy arising out of the parties' sales contract would be settled by arbitration, but specified the arbitrator had no power to make an award that had the effect of changing, modifying or altering any provision of the parties' contract. The arbitrator's award concluded that a clause disclaiming warranties and excluding consequential damages was unconscionable and unenforceable, and awarded damages to the buyer on that basis. The seller contends the arbitrator exceeded his powers because the award altered, indeed nullified, a contractual provision. We affirm the judgment confirming the award, because the seller expressly responded to the buyer's claim of unconscionability and failed to assert, at any time before or during the arbitration proceeding, that the arbitrator's power to find the clause unconscionable or unenforceable was limited by the arbitration clause. A party cannot wait until after an award is made to claim that an issue expressly presented to the arbitrator for decision is beyond his authority.

## FACTUAL AND PROCEDURAL BACKGROUND

J.C. Gury Company (Gury) is a family-owned business engaged in the manufacture and sale of reflective signs. The manufacturing process consists of applying reflective sheeting to metal backing on which customer-designated designs are placed. For a number of years, Gury used reflective sheeting material produced and sold by Nippon Carbide Industries (USA) Inc. (Nippon Carbide) in the process.

Gury purchased reflective sheeting material from Nippon Carbide only after testing the product for its intended use in reflective signage. For a number of years, Gury used Nippon Carbide's reflective sheeting without experiencing any product defects. However, after Nippon Carbide relocated the site of its reflective sheeting manufacturing process from Japan to China, Gury began to experience defects in the signs. The defects consisted of cracking, separation and peeling in over 37,000 reflective signs Gury sold to its customers.

Gury advised Nippon Carbide of the product defects. It claimed the defects were attributable to a change in characteristics of the reflective sheeting produced by Nippon Carbide. It sought from Nippon Carbide reimbursement of $90,000 for costs it incurred in replacing the defective signs returned by customers.

Nippon Carbide refused Gury's demand for reimbursement. It insisted the reflective sheeting was not defective, but in fact exceeded the minimum tensile strength stated in the printed product specifications. Nippon Carbide further maintained that any defects were attributable to Gury's use of a nonrecommended ink product on the metal sheeting. Finally, it asserted that the warranty disclaimer and the consequential damage exclusion in the parties' contract restricted Gury's relief to product replacement and precluded any liability for additional damages for breach of warranty of fitness for intended use.[1]

Consistent with the contract, the parties' dispute was submitted to arbitration. Following a hearing, the arbitrator made an award in J.C. Gury's favor. In reaching his decision, the arbitrator:

—Accepted an expert's testimony that the defects in the reflective sheeting were attributable to a variation in product tensile strength between the test samples and later samples and were caused by Nippon Carbide's failure to maintain quality control rather than Gury's use of an ink product in the manufacturing process;

—Concluded that any limitation imposed on Gury's ability to recover consequential damages for the product defects would be unconscionable, based upon lengthy course of dealing between Gury and Nippon Carbide, the absence of any discussion between Gury and Nippon Carbide concerning a

---

[1] The warranty disclaimer and consequential damage exclusion appear in section 2 of the contract, which states in part: "NIPPON CARBIDE INDUSTRIES (USA) INC. 'Seller' warrants its products to be free from defects in materials and workmanship in accordance with its published express warranty for each individual product. Buyer's sole remedy for failure of products to conform to said warranty is the replacement of the defective products, provided Buyer complies with the procedure and requirements as specifically set forth in the published express warranty. [¶] . . . [¶] THIS WARRANTY IS IN PLACE OF AND LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE AND OF ANY OTHER OBLIGATIONS OF SELLER, WHICH WARRANTIES AND OTHER OBLIGATIONS ARE SPECIFICALLY DISCLAIMED. SELLER SHALL NOT BE LIABLE FOR ANY LOSS, DAMAGE, OR INJURIES, DIRECT OR INDIRECT, CONSEQUENTIAL OR INCIDENTAL, ARISING FROM THE USE OR INABILITY TO USE SAID PRODUCTS OR DEFECTIVE PRODUCTS."

warranty disclaimer or damage limitation, which were standard, preprinted contractual terms, and Nippon's superior bargaining position in its relationship with Gury; and

—Determined that Nippon Carbide breached the warranty of fitness for intended use by failing to control product quality and that Gury was entitled to consequential damages.

Gury and Nippon Carbide filed petitions to confirm and to vacate the award, respectively. Nippon Carbide argued that the arbitration clause of the contract expressly prohibited the arbitrator from nullifying or modifying a contractual provision, and that he therefore exceeded his authority when he found provisions of the contract unconscionable and unenforceable. Following a hearing, the trial court determined the arbitrator did not exceed his authority because he was merely interpreting the provisions. The court upheld the arbitrator's award of $85,956.02 in consequential damages in Gury's favor and further awarded Gury $11,200.70 in attorney fees, costs and interest.

## DISCUSSION

### I. *The consequential damages award did not exceed the arbitrator's powers.*

Nippon Carbide argues on appeal, as it did to the trial court, that the arbitrator acted in excess of his authority by declaring unconscionable and unenforceable the warranty disclaimer and consequential damage exclusion provisions of the contract. Its contention is based on the arbitration clause of the contract, which expressly limits the arbitrator's power to modify or alter terms of the contract. We conclude that, while the arbitration clause limited the scope of the arbitrator's power, the conduct of the parties at the arbitration proceeding operated to waive that limitation. Nippon Carbide, while contending at the arbitration that the warranty disclaimer and consequential damage exclusion clause should be enforced, at no time argued or otherwise advised the arbitrator that he had no authority to find the clause unenforceable. Consequently, Nippon Carbide may not complain on appeal that the arbitrator exceeded his authority.

We briefly describe the arbitration clause and the legal principles that govern our review and inform our conclusion that the trial court's judgment must be affirmed.

The arbitration clause in the parties' contract applies broadly to "any controversy [or] claim arising out of or relating to [the] Contract . . . ." The arbitrator's power, however, is expressly limited by the following clause: "(a) Scope of Power: In any arbitration proceeding arising under this Contract, the arbitrators shall not have the power to change, modify or alter any expressed condition, term or provision of this Contract or to grant an award which has such effect, and to that extent the scope of their authority is so limited."

■ As a general rule, the submission of a dispute to arbitration as an alternative to judicial adjudication is a matter of contract. (*Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576, 588 [19 Cal.Rptr.2d 295].) In this case, it is difficult to disagree with the proposition that an arbitral finding that a contract provision is unconscionable and unenforceable necessarily effects a change or alteration in that provision, within the meaning of the parties' arbitration clause. ■ Certainly an award founded on the conclusion a contractual provision is unenforceable "has [the] effect" of "chang[ing], modify[ing] or alter[ing]" that provision of the contract. However, the parties may submit for decision issues they were not contractually compelled to submit to arbitration. In such an event, courts look both to the contract and to the scope of the submissions to determine the arbitrator's authority. (*Executone Information System, Inc. v. Davis* (5th Cir. 1994) 26 F.3d 1314, 1323.)

■ In this case, we conclude that Nippon Carbide submitted the issue of unconscionability to the arbitrator for decision, and cannot now argue that an adverse decision on the issue exceeded the arbitrator's powers. Thus:

—Before the arbitration, Gury and Nippon Carbide submitted briefs for the arbitrator's consideration. Gury devoted almost half of its brief to its contention that the warranty disclaimer in the contract was unenforceable and unconscionable. In reply, Nippon Carbide argued that "no basis exist[ed] for refusing to enforce" its warranty disclaimer. It distinguished precedents cited by Gury, and cited precedent rejecting claims that a contract's warranty disclaimer and damages limitation were unconscionable. Most significantly, in no portion of its brief did Nippon Carbide contend that the issue of unconscionability exceeded the arbitrator's authority.

—During the subsequent arbitration hearing, which spanned two days, both parties offered testimonial and documentary evidence beyond the issue of product quality control. The evidence related to issues concerning the course

of dealing, lack of notice and discussion about product specification changes, warranty disclaimer and damage limitation exclusion, relative bargaining position, and measure of damages. At no time during the hearing did Nippon Carbide object to the consideration of any of these issues or to evidence relating to them on the ground that the arbitrator was prohibited from finding a contractual term unconscionable or unenforceable.

■ Nippon Carbide repeatedly insists it never agreed to waive the contractual limitation on the arbitrator's powers, and "continually reminded the arbitrator of the terms and conditions of the contract." But Nippon Carbide at no time "reminded the arbitrator" of the contractual limitation on the scope of his authority in the arbitration clause of the contract. Nippon Carbide does not, because it cannot, cite to any evidence, pleading or argument in the record showing it ever suggested to the arbitrator that he had no authority to find the warranty clause unconscionable or to refuse to enforce it. In short, the record supports only one conclusion: that both parties unequivocally submitted the issue of unconscionability to arbitration. Having done so, Nippon Carbide may not now complain that the arbitrator exceeded his authority. (*Porter v. Golden Eagle Ins. Co.* (1996) 43 Cal.App.4th 1282, 1291, fn. 7 [51 Cal.Rptr.2d 338] ["a party may not fully argue the merits of an issue and present its desired outcome thereon, then claim on review that this was merely its way of telling the arbitrator he could not consider the issue"].) As stated in an early decision, "It would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not." (*Lindsay-Strathmore I. Dist. v. Superior Ct.* (1920) 182 Cal. 315, 338 [187 P. 1056].)

## II. *The award of costs and attorney fees was proper.*

Nippon argues the trial court's decision confirming the award of attorney fees and awarding additional attorney fees and costs "disregarded the parties' contract . . . ." Nippon is mistaken. The contract expressly provides for attorney fees to the prevailing party and Gury, having obtained a net monetary recovery, is the prevailing party. Consequently, Gury is entitled to recover its attorney fees under the contract and its costs as a matter of right under Code of Civil Procedure section 1032 et seq.

## DISPOSITION

The judgment is affirmed. Gury is entitled to its costs on appeal.

Cooper, P. J., and Flier, J., concurred.